# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| CARMEN SANTANA, individually and on behalf of all others similarly situated, <br><br> v. <br><br> JOHNSON CONTROLS, INC. | **Case No. 2:23-cv-00930** <br> FLSA Collective Action <br><br><br><br> Jury Trial Demanded |

## ORIGINAL NATIONWIDE COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Like many other companies across the United States, Johnson Controls, Inc.'s (JCI) Kronos-based timekeeping and payroll systems were affected by a service outage in beginning in December 2021.

2.      That outage led to problems in timekeeping and payroll throughout JCI's organization.

3.      As a result, JCI's workers who were not exempt from overtime under federal law were not paid for all overtime hours worked and/or were not paid their proper overtime premium on time, if at all, for all overtime hours worked during and after the onset of the Kronos outage.

4.      Carmen Santana is one such JCI worker.

5.      JCI's failure to pay wages, including proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

6.      Santana worked for JCI during the Kronos outage and was affected by these pay practices—just like JCI's other nonexempt workers.

7.     This action seeks to recover the unpaid wages and other damages JCI owes Santana and these all these workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal law.

**JURISDICTION & VENUE**

8.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because JCI is headquartered in this District.

**PARTIES**

10.     **Plaintiff Carmen Santana** is a natural person.

11.     Santana was, at all relevant times, an employee of JCI.

12.     Santana worked for JCI during the Kronos outage.

13.     Santana represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of JCI who worked at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, until the time that JCI regained full access to all Kronos products and services, <u>and</u> resumed normal employee timekeeping and payment operations.[1]**

14.     Throughout this Complaint, the FLSA Collective members are also referred to as the "Similarly Situated Workers."

15.     **Defendant Johnson Controls, Inc. ("JCI")** is a domestic corporation.

16.     JCI maintains its headquarters and principal place of business in this District.

---

[1] The FLSA Collective excludes those persons who opted into *Henderson v. Johnson Controls, Inc.*, No 2:22-cv-00414 (E.D. Wisc.).

17.     JCI may be served by service upon its registered agent, **CT Corporation System, 301 S. Bedford St., Ste. 1, Madison, WI 53703**, or by any other method allowed by law.

## Coverage Under the FLSA

18.     At all relevant times, JCI was an employer of Santana within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19.     At all relevant times, JCI was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20.     JCI was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     During at least the last three years, JCI has had gross annual sales in excess of $500,000.

22.     JCI was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

23.     JCI employs many workers, including Santana, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

24.     The goods and materials handled, sold, or otherwise worked on by Santana and other JCI employees and that have been moved in interstate commerce include, but are not limited to, construction HVAC, fire, security, and other building tools and equipment.

## Facts

25.     JCI provides fire, HVAC, security equipment, and other facility management products and services for buildings.

26. Many of JCI's employees are non-exempt hourly and salaried workers.

27. Since at least 2021, JCI has used Kronos timekeeping software.

28. On or about December 11, 2021, the Kronos system suffered a disruption in service due to a ransomware attack.

29. The Kronos outage interfered with the ability of Kronos users, including JCI, to use Kronos to track hours and pay employees.

30. For at least a portion of time following the Kronos hack, JCI failed to accurately track the hours that Santana and Similarly Situated Workers worked.

31. For at least a portion of time following the Kronos outage, JCI failed to correctly pay Santana and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

32. Instead, JCI used various methods to estimate the number of hours Santana and Similarly Situated Workers have worked in each pay period.

33. As a result of JCI's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

34. As a result of JCI's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

35. Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

36. Santana is one of the many JCI employees affected by these pay and timekeeping practices.

37.     Santana regularly worked over 40 hours per week for JCI.

38.     Santana worked 40 hours, or more, for JCI during the Kronos outage.

39.     But Santana was not paid the proper overtime premium for all hours worked on time, if at all, for each of those weeks after the onset of the Kronos service disruption, on or about December 11, 2021.

40.     In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

41.     JCI knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

42.     JCI knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

43.     JCI could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

44.     But JCI did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

45.     It was feasible for JCI to put in timekeeping and pay systems during the Kronos outage so that employees could be timely paid the full and correct amounts of money they were owed for the work they did for the company.

46.     But JCI failed to put a competent system in place to ensure that happened.

47.　In other words, JCI pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than taking steps to make sure its employees were paid on time and in full for the work they did.

48.　An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *Cahill v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

49.　Yet, in the wake of the Kronos outage, that is exactly what JCI did.

50.　Santana is just one of the many front-line employees who had to shoulder the burden of this decision by JCI.

51.　Santana is just one of the many JCI employees who had to shoulder the burden of JCI's timekeeping and payroll policies and practices.

52.　Santana was a non-exempt hourly employee of JCI.

53.　Santana regularly worked over 40 hours per week for JCI.

54.　Santana's normal, pre-Kronos outage hours are reflected in JCI's records.

55.　Santana regularly worked over 40 hours per week for JCI during payroll cycles affected by the Kronos outage.

56.　In payroll cycles affected by the Kronos outage, JCI did not timely pay Santana and Similarly Situated Workers for their actual hours worked each week.

57.　In payroll cycles affected by the Kronos outage, JCI did not accurately record the hours worked by Santana and Similarly Situated Workers, in multiple workweeks.

58.　JCI was aware of the overtime requirements of the FLSA.

59.     JCI nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Santana.

60.     JCI nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Santana.

61.     JCI's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

62.     The full overtime wages owed to Santana and the Similarly Situated Workers became "unpaid" when the work for JCI was done—that is, on Santana and the Similarly Situated Workers' regular paydays. *See*, *e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

63.     At the time JCI failed to pay Santana and the Similarly Situated Workers in full for their overtime hours by their regular paydays, JCI became liable for all liquidated damages and any other damages owed under federal law.

64.     In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

65.     Any payment made by JCI to Santana or the Similarly Situated Workers that JCI may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

66. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

67. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to JCI's acts and omissions resulting in the unpaid wages in the first place.

68. Santana and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by JCI under federal law.

## COLLECTIVE ACTION ALLEGATIONS

69. Numerous individuals were victimized by JCI's patterns, practices, and policies, which are in willful violation of the FLSA.

70. Based on her experience and tenure with JCI, Santana is aware that JCI's illegal practices were imposed on the FLSA Collective.

71. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

72. These employees are victims of JCI's respective unlawful compensation practices and are similarly situated to Santana in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

73. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

74. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

75.     JCI's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

76.     The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

**CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA**

77.     Santana incorporates each other allegation.

78.     By failing to pay Santana and the FLSA Collective members overtime at 1.5x their regular rates, on time and in full, JCI violated the FLSA. 29 U.S.C. § 207(a).

79.     JCI owes Santana and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

80.     JCI owes Santana and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

81.     Likewise, JCI owes Santana and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

82.     JCI knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Santana and the Collective members the compensation owed to them under the FLSA.

83.     Because JCI knew, or showed reckless disregard for whether, its pay practices violated the FLSA, JCI owes these wages for at least the past three years.

84. JCI's failure to pay compensation owed under the FLSA to Santana and the Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

85. Because JCI's decision not to pay overtime was not made in good faith, JCI also owes Santana and the Collective members an amount equal to the unpaid wages as liquidated damages.

86. Accordingly, Santana and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including their agreed-upon wages up to 40 hours each week they worked overtime and overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Santana prays for judgment against JCI as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order finding JCI liable for violations of federal wage laws with respect to Santana and the FLSA Collective members;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Santana and the FLSA Collective members;

d. For an equitable accounting and restitution of wages due to Santana and the FLSA Collective members;

e. For a judgment awarding costs of this action to Santana and the FLSA Collective members;

f. For a judgment awarding attorneys' fees to Santana and the FLSA Collective members;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Santana and the FLSA Collective members; and

h. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone  713 999 5228
matt@parmet.law

**Andrew R. Frisch**
FL Bar # 027777
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Facsimile: (954) 327-3013
Email: AFrisch@forthepeople.com

**C. Ryan Morgan, Esq.**
FL Bar # 0015527
(*seeking admission pro hac vice*)
**MORGAN & MORGAN, P.A.**
20 N. Orange Ave., 15th Floor
Orlando, Florida 32801
Telephone:    (407) 420-1414
Email:        rmorgan@forthepeople.com

**Attorneys for Plaintiff**

## JURY DEMAND

Santana demands a trial by jury on all issues.

*/s/ Matthew S. Parmet*

_____

**Matthew S. Parmet**